IN THE UNTED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NADIR K. DURRANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CAUSE NO. 4:21-CV-03111 |
| | § | |
| GUIDEONE NATIONAL INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT GUIDEONE INSURANCE COMPANY
MOTION FOR SUMMARY JUDGMENT**

---

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

Carolyn Russell
Texas State Bar No. 24003913
USDC SD/TX: 25141
carolyn.russell@ogletree.com
One Allen Center
500 Dallas, Suite 3000
Houston TX  77002
(713) 655-0855 – Phone
(713) 655-0020 – Fax

**ATTORNEY-IN-CHARGE FOR
DEFENDANT**

**OF COUNSEL:**
Ryan J. Swink
Texas State Bar No. 24107940
USDC SD/TX: 3631019
ryan.swink@ogletree.com
One Allen Center
500 Dallas, Suite 3000
Houston TX  77002
(713) 655-0855 – Phone
(713) 655-0020 – Fax

## TABLE OF CONTENTS

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ................................................. 1

NATURE AND STAGE OF THE PROCEEDING ....................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 4

SUMMARY JUDGMENT STANDARD .................................................................. 7

MCDONNELL DOUGLAS BURDEN SHIFTING FRAMEWORK ................................ 7

ARGUMENT ................................................................................................. 8

    A.   There is no direct evidence to support Plaintiff's claims. ............................ 8

    B.   Plaintiff was not subjected to a hostile work environment. ......................... 10

    C.   Plaintiff cannot establish a *prima facie* case of retaliation. ....................... 11

    D.   GuideOne is entitled to the Same Actor Inference of non-discrimination. .............. 12

    E.   Plaintiff was terminated for legitimate non-discriminatory, non-retaliatory, and non-pretexutal reasons. ...................................................................... 13

    F.   In the alternative, GuideOne is entitled to partial summary judgment on its after-acquired evidence defense. ...................................................................... 17

    G.   In the alternative, GuideOne is entitled to partial summary judgment on its failure to mitigate defense. ...................................................................... 18

CONCLUSION ............................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Amezquita v. Beneficial Texas, Inc.*,
   264 F. Appx. 379 (5th Cir. 2008).................................................................16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................7

*Branch v. City of Brookshire*,
   No. CV H-16-1888, 2018 WL 3439636 (S.D. Tex. July 16, 2018)........................19

*Brown v. CSC Logic, Inc.*,
   82 F.3d 651 (5th Cir. 1996) ....................................................................13

*Burton v. Freescale Semiconductor, Inc.*,
   798 F.3d 222 (5th Cir. 2015) ..................................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................7

*Crawford v. Formosa Plastics Corp., La.*,
   234 F.3d 899 (5th Cir. 2003) ....................................................................8

*Crosby v. Computer Sci. Corp.*,
   470 F. App'x 307 (5th Cir. 2012) ............................................................16

*Davis v. Chevron U.S.A., Inc.*,
   14 F.3d 1082 (5th Cir. 1994) ....................................................................8

*Delaval v. Ptech Drilling Tubulars, LLC*,
   824 F.3d 476 (5th Cir. 2016) ..................................................................14

*Esparza v. Univ. of Tex. at El Paso*,
   471 S.W.3d 903 (Tex. App.–El Paso 2015, no pet.).......................................10

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
   778 F.3d 473 (5th Cir. 2015) ....................................................................7

*Fenley v. Texas Plumbing Supply Co., Inc.*,
   14-19-00851-CV, 2021 WL 1881273 (Tex. App.—Hous. [14th Dist.] May 11,
   2021) ...............................................................................................13

*Fontenot v. Hughes MRO, Ltd.*,
   No. CIV.A. H-06-1245, 2007 WL 2670099 (S.D. Tex. Sept. 7, 2007)..................19

*Glaskox v. Harris Cty., Tex.*,
   537 F. App'x 525 (5th Cir. 2013) ............................................................15

*Gollas v. Univ. of Tex. Health Sci. Ctr.*,
425 F. App'x 318 (5th Cir. 2011) ........................................................12

*Gorman v. Verizon Wireless Texas, L.L.C.*,
753 F.3d 165 (5th Cir. 2014) ..............................................................11

*Greer v. Armstrong World Industries, Inc.*,
5:09-CV-20, 2010 WL 2926043 (S.D. Miss. July 21, 2010) ....................16

*Grimes v. Wal–Mart Stores Texas, L.L.C.*,
505 F. App'x 376 (5th Cir. 2013) ........................................................16

*Harris–Childs v. Medco Health Solutions, Inc.*,
169 Fed.Appx. 913 (5th Cir. 2006) ......................................................12

*Harry v. Dallas Hous. Auth.*,
662 F. App'x 263 (5th Cir. 2016) ..........................................................9

*Hernandez v. Yellow Transp., Inc.*,
670 F.3d 644 (5th Cir. 2012) ..............................................................15

*Jackson v. Corp. Serv. Co.*,
No. CV H-11-4404, 2013 WL 11309365 (S.D. Tex. Apr. 17, 2013) (Gilmore, J.)................9

*Jones v. Overnite Transp. Co.*,
212 F. App'x 268 (5th Cir. 2006) ..........................................................9

*Kanen v. DeWolff, Boberg & Associates, Inc.*,
05-20-00126-CV, 2022 WL 152527 (Tex. App.—Dallas Jan. 18, 2022) ..............13

*Keller v. Coastal Bend Coll.*,
629 F. App'x 596 (5th Cir. 2015) ........................................................14

*Laxton v. Gap Inc.*,
333 F.3d 572 (5th Cir. 2003) ..............................................................14

*Lee v. Kan. City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) ..............................................................15

*LeMaire v. Louisiana*,
480 F.3d 383 (5th Cir. 2007) ..............................................................11

*Manning v. Chevron Chem. Co.*,
332 F.3d 874 (5th Cir. 2003) ..............................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)............................................................................7

iv

*McCoy v. City of Shreveport*,
  492 F.3d 551 (5th Cir. 2007) ........................................................................................7

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ............................................................................................ *passim*

*McKennon v. Nashville Banner Pub. Co.*,
  513 U.S. 352 (1995) ....................................................................................................17

*Moore v. United Parcel Serv., Inc.*,
  150 F. App'x 315 (5th Cir. 2005) ...............................................................................12

*Okoye v. University of Texas Houston Health*,
  245 F.3d 507 (5th Cir. 2001) ......................................................................................14

*Owens v. Circassia Pharm., Inc.*,
  33 F.4th 814 (5th Cir. 2022) .........................................................................................8

*Perches v. Elcom, Inc.*,
  500 F. Supp. 2d 684 (W.D. Tex. 2007) .......................................................................12

*Perez v. Tex. Dep't of Crim. Justice*,
  395 F.3d 206 (5th Cir. 2004) ......................................................................................15

*Quantum Chemical Corp. v. Toennies*,
  47 S.W.3d 473 (Tex. 2001) .........................................................................................13

*Raggio v. Parkland Meml. Hosp.*,
  CA 3-95-CV-0680-R, 1997 WL 135662 (N.D. Tex. Mar. 12, 1997) ..........................13

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000) ......................................................................................................8

*Sparks v. Griffin*,
  460 F.2d 433 (5th Cir. 1972) ......................................................................................18

*Spears v. Patterson*,
  337 F. App'x 416 (5th Cir. 2009) ...............................................................................13

*Stewart v. Miss. Transp. Comm'n*,
  586 F.3d 321 (5th Cir. 2009) ......................................................................................11

*Tratree v. BP N. Am. Pipelines, Inc.*,
  277 Fed.Appx. 390 (5th Cir. 2008) .............................................................................12

*Turner v. Kan. City S. Ry. Co.*,
  675 F.3d 887 (5th Cir. 2012) ................................................................................15, 17

*University of Texas Southwestern Medical Center v. Nassar*,
  570 U.S. 338 (2013) .......................................................................................................11

*Vaughn v. Woodforest Bank*,
  665 F.3d 632 (5th Cir. 2011) .......................................................................................15

*Washburn v. Harvey*,
  504 F.3d 505 (5th Cir. 2007) .........................................................................................9

*Weeks v. Coury*,
  951 F. Supp. 1264 (S.D. Tex. 1996) ............................................................................17

*West v. Nabors Drilling USA, Inc.*,
  330 F.3d 379 (5th Cir. 2003) .......................................................................................18

*Wilson v. L&B Realty Advisors, LLP*,
  3:20-CV-2059-G, 2022 WL 102564 (N.D. Tex. Jan. 11, 2022).................................16

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant GuideOne Insurance Company ("GuideOne") requests this Court enter summary judgment in its favor and dismiss of all Plaintiff Nadir K. Durrani's ("Plaintiff") claims with prejudice.

## NATURE AND STAGE OF THE PROCEEDING

This is an employment case. Plaintiff, a former GuideOne employee, asserts claims for age, race, national origin, color, and/or religious discrimination and retaliation under the Texas Commission on Human Rights Act ("TCHRA") against his former employer GuideOne. GuideOne employed Plaintiff from December 15, 2019 to November 4, 2020 when it terminated his employment for plagiarism that exposed GuideOne to reputational and legal risk.

The discovery deadline has passed. As explained herein, record evidence demonstrates no genuine issues of material fact exist and that GuideOne is entitled to judgment as a matter of law on all of Plaintiff's claims.

## SUMMARY OF THE ARGUMENT

Q:      Sure. Do you believe that plagiarism is a bad thing?

A:      I – I do not have an opinion about that.

Q:      You do not?

A:      I do not have an opinion.

* * *

Q:      Do you understand her statement that plagiarism is unethical?

A:      That's what she's saying.

Q:      Do you agree with that?

A:      It's – It's – it's really, really a broad term. What is – what is plagiarism? What was plagiarized? I mean, it – it – it there's – there's – there are no

1

specifics. You know, in – in gen – general term, I – it's kind of hard to establish that.[1]

* * *

"What prompted Sam Waters to dig out a months old document and look for plagiarism? Why legal, [sic] did not catch any issues when they reviewed the same document for the first time?"[2]

The above direct testimony exemplifies Plaintiff's logic in formulating his theory that he was wrongfully terminated. According to Plaintiff, plagiarism is not a bad thing and it was GuideOne's legal department's fault for not catching his plagiarism the first time. Based on this untenable opinion, Plaintiff postulates that something else must have motivated his termination. Plaintiff is wrong. As demonstrated herein, Plaintiff was terminated because his plagiarism exposed GuideOne to reputation and legal risk. Nothing else is at play.

GuideOne's identification of potential plagiarism, subsequent investigation, and decision making process leading to Plaintiff's termination are well-documented by contemporaneous emails, text messages, and notes, all of which mandate the conclusion that Plaintiff was terminated for legitimate, non-discriminatory, non-retaliatory reasons. Nonetheless, Plaintiff remains convinced that GuideOne terminated his employment based on a laundry list other improper criterion.

Indeed, Plaintiff contends his termination was motivated by his age, race, national origin, color, and/or religion because his subordinate, Randell Thompson—who was also investigated for plagiarism—was not terminated as well. However, unlike Plaintiff, GuideOne's investigation determined that Mr. Thompson did not plagiarize copyrighted material. Instead, Mr. Thompson improperly cited his source by referencing them in section headers without including a link to the

---

[1] Exhibit 1, Plaintiff's Depo. at 67:9-13 and 120:18-121:1.
[2] Exhibit 2,  November 11, 2020 email from Plaintiff to Katie Johnson.

original article. Once Mr. Thompson demonstrated that he made a good faith effort to cite his sources, GuideOne decided he should not be terminated.

Plaintiff, on the other hand, was found to have plagiarized the following from a copyrighted article published by Lorman Educational Services: "Mothballing a building requires consideration of architectural structural and MEP features as well as the effects of weather, corrosion, and ventilation on the existing features."[3] Until his deposition, Plaintiff never denied the allegation of plagiarism. At deposition, his denial was tenuous at best. In defense of the clearly plagiarized material, Plaintiff avers that it is a generic statement like "the grass is green" and that is why it is identical to the Lorman article.[4] Even if Plaintiff's characterization is correct (which it is not), it does not change the fact that, at the time of Plaintiff's termination, GuideOne had a good faith belief that Plaintiff plagiarized and exposed it to reputational and legal risk.

At bottom, GuideOne investigated articles written by two employees for potential plagiarism. GuideOne's investigation determined that Plaintiff copied a sentence from a copyrighted article without citation. The investigation also determined that Mr. Thompson cited his sources but failed to include a link to the source. This difference in wrongdoing accounts for the difference in treatment received and is not evidence of improper motive. The differences between Plaintiff's and Mr. Thompson's conduct, coupled with the fact that the decision to hire

---

[3] Exhibit 1, Plaintiff's Depo. at 82:3-8.

[4] *Id.* at 83:20-84:9 (Q. All right. Okay. We can -- we can put that aside for now. Thank you. A. Just wanted to kind of -- if you -- if you – if you don't mind, to clarify something, that it's a sentence matching with another article. Especially, you know, it -- it pertains to -- to the -- the basic contents of mothballing. It's -- it's like if I -- in my statement, if I say the grass is green, I can guarantee you if you Google that, the grass is green will have a million results. This is a basic statement out of the contents of mothballing. Any -- there could be a million statements that could be made, you know. Just like me saying the house is built with bricks and wood, you know. So it's -- this is not something -- a strategy, a policy, a procedure, or any of that, but just a basic statement that states a fact.).

3

and fire Plaintiff was made by the same individual, Mark Groenheide, is fatal to all of Plaintiff's claims. Therefore, summary judgment in favor of GuideOne is appropriate.

In the alternative, GuideOne is entitled to partial summary judgment on its after acquired evidence and failure mitigate defenses.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

In December 2019, Mark Groenheide hired Plaintiff as Head of Risk Engineering. Ex. 3, Groenheide Aff. at ⁋ 4. Mr. Groenheide hired Plaintiff to assist with GuideOne's new "Specialty Division," which focused on underwriting insurance policies that involve unique and complex risks. *Id.* In September 2020, Mr. Groenheide hired Adam Berger to run GuideOne's new "Managing General Underwriter" ("MGU") service, which digitized the underwriting process for the energy industry. *Id.* at ⁋ 5. GuideOne hired Randell Thompson as a risk engineer in July 2020. Ex. 4, Thompson Aff. at ⁋ 2. The MGU launched on November 1, 2020 and garnered significant attention in the insurance industry. Ex 3, Groenheide Aff. at ⁋ 12.

As the Head of Risk Engineering, one of Plaintiff's duties was to write articles for GuideOne's brokers, insurers, and clients. *Id.* at ⁋ 6. On November 2, 2020, Plaintiff emailed Mr. Groenheide and Mr. Berger an article titled *Energy Equipment Fire Protection Guide*. *Id.* at ⁋ 7. Consistent with the usual procedures, Mr. Groenheide instructed Plaintiff to send the article to GuideOne's legal and marketing departments. *Id.* at ⁋ 8. Plaintiff emailed a copy of the article to Sam Walters, Deputy General Counsel at GuideOne, and copied Mr. Groenheide, Mr. Berger, and John Dlouhy from GuideOne's marketing department. Ex. 5, November 4, 2020 email chain.

During his review of the article, Mr. Waters noticed a change in writing style, which prompted him to perform an internet search of a portion of the article's text. Ex. 6, Waters' Aff. at ⁋ 7. The search revealed that a portion of the article came directly from an article authored by Atherton and Ash. *Id.* Mr. Waters subsequently responded to Plaintiff's email advising that failure

4

to correctly cite his sources was a violation of the original authors' copyright. Ex. 5, November 4, 2020 email chain. Mr. Groenheide, who was copied on Mr. Waters' response, was extremely concerned about the potential copyright violation because GuideOne's MGU service had just launched a few days earlier. Ex. 3, Groenheide Aff. at ¶ 12. Mr. Groenheide was particularly concerned about GuideOne's reputation and the damage an allegation of plagiarism could cause. *Id.*; Ex. 5, November 4, 2020 email chain. Thus, Mr. Groenheide instructed Mr. Berger to further investigate all other materials for other violations of copyright law and GuideOne's policies. *Id.*

The investigation lead to the discovery of the *Mothballing During the Covid-19 Pandemic* article, which Plaintiff had authored a few months earlier. Ex. 7, email between Berger and Waters. Mr. Waters investigated the article and discovered part of the article was plagiarized from an article published by Lorman. *Id.* Particularly, Mr. Waters observed that the sentence, "Mothballing a building requires consideration of architectural structural and MEP features as well as the effects of weather, corrosion, and ventilation on the existing features," was taken directly from the Lorman article. *Id.*

Following the investigation, Mr. Groenheide, Ms. Meyer, Ms. Johnson, and Mr. Berger conferred regarding next steps. Ex. 8, Johnson Aff. at ¶ 7. Mr. Groenheide decided that Plaintiff and Mr. Thompson should be terminated for plagiarism. *Id.* Ms. Johnson and Mr. Berger planned to hold termination discussions with Plaintiff and Mr. Thompson the next day, Thursday, November 5, 2020. *Id.*

Earlier that day, Ms. Johnson had contacted Shane Maas in IT to discuss GuideOne's technical capabilities around file sharing and to understand what files had been used or shared between Plaintiff and Mr. Thompson. Ex. 9, Maas Aff. at ¶ 4. While responding to Ms. Johnson's question, Mr. Maas noticed that Plaintiff had downloaded an unusually large number of documents

from GuideOne's Sharefile site starting earlier that day. *Id.* at ¶ 4 and attachment. Mr. Maas contacted Mr. Johnson in the evening of November 4, 2020 and informed her that Plaintiff had downloaded an unusually large number of GuideOne documents that day. Ex. 8, Johnson Aff. at ¶ 8.

After learning of the concerns raised by Mr. Maas, Ms. Johnson spoke with Mr. Groenheide via telephone. *Id.* at ¶ 9. During this discussion, Mr. Groenheide made the decision to terminate Plaintiff and Mr. Thompson immediately. *Id.*; Ex. 14, Johnson Depo. at 110:1-14.

At 6:30 PM on November 4, 2020, Ms. Johnson and Mr. Berger called Plaintiff and informed him of his termination. *Id.* at ¶ 10. Mr. Berger informed Plaintiff that he was being terminated for plagiarism, which violated GuideOne's code of conduct and created reputational and legal risk for GuideOne. Ex.10, Termination Recap - Plaintiff. During the call Plaintiff did not deny the allegation but, instead, repeatedly stated "legal cleared everything" he had written. Ex. 8, Johnson Aff. at ¶ 10.

Following the call with Plaintiff, Ms. Johnson and Mr. Berger called Mr. Thompson to inform him of his termination. *Id.* at ¶ 11. Mr. Thompson immediately denied the plagiarism allegation and asserted that all of the sources used in the *Energy Equipment Fire Protection Guide* were properly cited. *Id.*.; Ex. 16, Termination Recap - Mr. Thompson. Ms. Johnson asked if Mr. Thompson could show where he had cited his sources. Ex. 8, Johnson Aff. at ¶ 11. Mr. Thompson indicated that he could and stated that he would email the document to Ms. Johnson and Mr. Berger. *Id.* Mr. Thompson was suspended pending the outcome of the document review. *Id.* A few minutes later, Mr. Thompson called Ms. Johnson and Mr. Berger and stated that he could no longer access his computer. *Id.* Mr. Berger advised he would work with IT to retrieve the document Mr. Thompson had sent to Plaintiff. *Id.*

On November 5, 2020, Mr. Berger reviewed the *Energy Equipment Fire Protection Guide* and informed Mr. Groenheide that Mr. Thompson had attempted to cite all of the sources in the article. Ex. 3, Groenheide Aff. at ‖ 13. Mr. Groenheide decided that Mr. Thompson should not be terminated. *Id.* As a result, the decision to terminate Mr. Thompson was reversed. *Id.* at ‖ 14.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must go "beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## MCDONNELL DOUGLAS BURDEN SHIFTING FRAMEWORK

A plaintiff "may prove a claim of intentional discrimination . . . either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "If the plaintiff presents only circumstantial evidence, then she must prove discrimination inferentially using '[t]he three-step *McDonnell Douglas-Burdine* minuet.'" *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (quoting *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994). Under the *McDonnell Douglas* framework, "the plaintiff must [first] establish *a prima facie* case of discrimination." *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 142 (2000). Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the employer meets its burden, the plaintiff must present "substantial evidence" that the asserted reason for termination is a pretext for discrimination. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022). To be sufficient, the evidence must be of the "nature, extent, and quality" to permit a jury to reasonably infer discrimination or retaliation. *Id.* (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2003)).

## ARGUMENT

All of Plaintiff's claims fail as a matter of law. First, Plaintiff has no direct evidence of discrimination or retaliation. Second, Plaintiff cannot establish a hostile work environment. Third, Plaintiff cannot establish a *prima facie* case of retaliation. Fourth, Plaintiff cannot overcome the presumption that discriminatory animus was not present where the same actor responsible for his termination—Mr. Groenheide—also hired him. Fifth, Plaintiff fails to create a genuine dispute of material fact regarding GuideOne's articulated legitimate non-discriminatory, non-retaliatory reason for its termination decision. Specifically, Plaintiff was terminated for plagiarism that exposed GuideOne to reputational and legal risk. Plaintiff has no evidence that establishes that this proffered reason is false or a pretext for discrimination or retaliation. Alternatively, GuideOne is entitled to partial summary judgment on its failure to mitigate defense and/or after acquired evidence defenses.

### A.     There is no direct evidence to support Plaintiff's claims.

In the context of employment discrimination and retaliation claims, such as the one brought by Plaintiff in this case, "direct evidence" includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action and evidence

that the person with decision-making authority took into consideration an improper motive. *Harry v. Dallas Hous. Auth.*, 662 F. App'x 263, 266 (5th Cir. 2016) (holding the comment "You have been in the United States for several years now, why can't you adapt?" is not direct evidence of discrimination because inference is required to link them to the employee's termination); *Jackson v. Corp. Serv. Co.*, No. CV H-11-4404, 2013 WL 11309365, at *8 & n. 3 (S.D. Tex. Apr. 17, 2013) (Gilmore, J.) (stating, "[d]irect evidence is rare and only encompasses a small universe of evidence: 'statements or documents which show on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action are direct evidence of discrimination,' and evidence that persons with decision–making authority evince racial animus constitute direct evidence of discrimination."). Here, Plaintiff has no direct evidence of discrimination or retaliation.

Nevertheless, GuideOne anticipates that Plaintiff may argue that statements allegedly made by Mr. Groenheide constitute direct evidence. These alleged statements, which GuideOne denies Mr. Groenheide made, are not direct evidence because they are not specific or directly linked to the adverse employment action. *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (vague allegation of a statement by a supervisor was not direct evidence); *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) ("Both comments and the request reveal a discriminatory motive on their face but lack the indicia of specificity and causation required to be direct evidence of race discrimination."). Indeed, Plaintiff admits he communicated only with Mr. Berger and Ms. Johnson about his termination. Ex. 1, Plaintiff's Depo. at 32:12-33:1, 46:2-6. Because Plaintiff only communicated about his termination with Mr. Berger and Ms. Johnson, any statements allegedly made by Mr. Groenheide could not possibly be directly linked to his termination. Therefore, Plaintiff has no direct evidence of discrimination or retaliation.

**B.      Plaintiff was not subjected to a hostile work environment.**

It is unclear from Plaintiff's Complaint whether he is alleging that he was subjected to a hostile work environment. To the extent that Plaintiff is asserting a hostile work environment claim, the claim fails as a matter of law. "To make a *prima facie* showing of a hostile environment claim, a plaintiff must show in part that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the victim's employment and create a hostile or abusive working environment." *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 912 (Tex. App.–El Paso 2015, no pet.). Plaintiff alleges Mr. Groenheide called him "Mr. T" on two or maybe three occasions. Ex. 1, Plaintiff's Depo. at 60:16-20. (Q. Did Mark call you Mr. T after February 2020? A. He did walking by my office one time. Stick -- stuck his head in there, "Hey, Mr. T." Q. So how many times in total did he call you Mr. T? A. Maybe two or three potentially.). Plaintiff also alleges Mr. Groenheide frequently used the "f" word and was critical about the way he dressed. *Id.* at 60:21-61:8 (Q. Is there any other way that Mark treated you with disrespect? A. His language. . . . Q. What about his language was disrespectful? A. Foul language. . . . Q. What language did he use? A. A lot of "f" words.), 61:24-62:6 (Q. Aside from calling you Mr. T two to three times, did Mark call you any other names? A. He would comment -- he would comment on the way I was dressed. Q. What would he say? A. You know, he would look at my shoes, "Hey, where did you get those shoes?" Or, you know, he was critical of my -- you know, the way I would dress.). Finally, Plaintiff alleges Mr. Groenheide cut him off and refused to answer his phone calls. *Id.* at 62:13-23 (Q. Is there any other way that Mark treated you with disrespect? A. Yes. Q. How so? A. He total cut me off.  He will not answer my phone calls). These allegations, which GuideOne deny, are insufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create a hostile or abusive working environment. Therefore, Plaintiff's hostile work environment claim(s) fail as a matter of law.

### C.      Plaintiff cannot establish a *prima facie* case of retaliation.

Because Plaintiff fails to provide direct evidence of retaliation, he must create a presumption of intentional retaliation by establishing a *prima facie* case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). A plaintiff may establish a *prima facie* case of retaliation based on indirect evidence by demonstrating that: (1) he participated in protected activity under the TCHRA, (2) he suffered an adverse employment action by his employer, and (3) there is a causal connection between the protected activity and the adverse action. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (stating elements for Title VII case). Retaliation claims under Title VII and TCHRA are analyzed similarly. *See Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (noting the "substantive law governing Title VII and TCHRA retaliation claims is identical"). "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360-61 (2013).

Here, Plaintiff cannot establish the first or third elements of his *prima facie* retaliation claim. Plaintiff alleges that he "expressed his concern" about a comment allegedly made by Mr. Groenheide to his co-worker Kent McCampbell. Original Complaint Dkt No. 1 at 6. This "concern" was nothing more than asking Mr. McCampbell his opinion about the alleged comment. Ex. 11, McCampbell Depo. at 46:10-47:9. Plaintiff's vague statement to Mr. McCampbell, if proven, does not constitute a protected activity. *See, e.g., Tratree v. BP N. Am. Pipelines, Inc*., 277 Fed.Appx. 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why

the treatment is unfair ... is not protected activity."); *Harris–Childs v. Medco Health Solutions, Inc*., 169 Fed.Appx. 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc*., 150 F. App'x 315, 319 (5th Cir. 2005) ("Moore ... was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."). Additionally, at deposition, Plaintiff admitted that he never went to human resources to complain about anything at any time. Ex. 1, Plaintiff's Depo. at 61:21-23 (Q. And did you ever go to human resources to complain about anything at any time? A. No.). Therefore, Plaintiff cannot establish the first element of his *prima facie* case and his retaliation claim fails as a matter of law.

Even if Plaintiff's vague statement to Mr. McCampbell constitutes a protected activity (which it does not), Plaintiff cannot prove a causal connection between the activity and his termination. To satisfy the causation prong of his *prima facie* case, "a plaintiff must show that the decision maker who committed the adverse employment action was aware of the plaintiff's protected activity." *Perches v. Elcom, Inc*., 500 F. Supp. 2d 684, 692 (W.D. Tex. 2007) (citing *Manning v. Chevron Chem. Co*., 332 F.3d 874, 883 (5th Cir. 2003)); *see Gollas v. Univ. of Tex. Health Sci. Ctr*., 425 F. App'x 318, 325 (5th Cir. 2011). There is no record evidence that the decision maker, Mr. Groenheide, was aware of Plaintiff's statement to Mr. McCampbell. Therefore, Plaintiff's retaliation claim fails as a matter of law.

### D.     GuideOne is entitled to the Same Actor Inference of non-discrimination.

Texas courts apply the *McDonnell Douglas* burden-shifting analysis to TCHRA employment discrimination cases. *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). Likewise, Texas court recognize the "same actor inference" of non-discrimination. *See Kanen v. DeWolff*,

*Boberg & Associates, Inc*., 05-20-00126-CV, 2022 WL 152527, at *5 (Tex. App.--Dallas Jan. 18, 2022); *Fenley v. Texas Plumbing Supply Co., Inc*., 14-19-00851-CV, 2021 WL 1881273, at *5 (Tex. App.—Hous. [14th Dist.] May 11, 2021). "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson*, 337 F. App'x 416, 421-22 (5th Cir. 2009). Where the same actor inference applies, Plaintiff must submit "sufficiently egregious" facts to overcome the inference that GuideOne's stated reasons for discharging Plaintiff are not pretextual. *Raggio v. Parkland Meml. Hosp*., CA 3-95-CV-0680-R, 1997 WL 135662, at *5 (N.D. Tex. Mar. 12, 1997) (citing *Brown v. CSC Logic, Inc*., 82 F.3d 651, 658 (5th Cir. 1996)).

Here, the record evidence demonstrates that Mr. Groenheide hired Plaintiff. Ex. 1, Plaintiff's Depo. at 21:2-3 (Q. Did Mark Groenheide offer you a job? A. Yes.); Ex. 3, Groenheide Aff. at ⁋ 4. Likewise, the record evidence demonstrates that Mr. Groenheide made the decision to terminate Plaintiff's employment. Ex. 8, Johnson Aff. at ⁋⁋ 7 & 9; Ex. 12, Johnson Notes ("Mark verbally said 11-4 evening term immediate given IT concern."); Ex. 13, Text Messages. Because the same actor inference applies, the burden shifts to Plaintiff to come forth with "sufficiently egregious" facts. As explained below, there is no record evidence of pretext, let alone, egregious conduct. Therefore, all of Plaintiff's claims fail as a matter of law.

### E.   Plaintiff was terminated for legitimate non-discriminatory, non-retaliatory, and non-pretexutal reasons.

GuideOne has articulated a legitimate reason for its employment decisions. Specifically, GuideOne terminated Plaintiff's employment because his plagiarism exposed GuideOne to reputation and legal risk. Ex. 8, Johnson Aff. at ⁋ 10. Once an employer articulates a legitimate reason for its business decision, the presumption of retaliation dissolves, and a plaintiff must prove the proffered reason constitutes pretext for discrimination or retaliation. *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 802–04 (1973). To satisfy this burden, Plaintiff must produce "substantial evidence indicating that the proffered legitimate reason is a pretext for discrimination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)) (emphasis added). Plaintiff may achieve this "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Delaval v. Ptech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016).

Here, Plaintiff's claims fail because no record evidence supports the conclusion that the stated reason for his termination are actually pretext for retaliation. Nonetheless, GuideOne anticipates that Plaintiff will argue that he can demonstrate pretext through allegedly disparate treatment he received as compared to Mr. Thompson. However, Plaintiff is not similarly situated to Mr. Thompson. Mr. Thompson was Plaintiff's subordinate and, therefore, not an appropriate comparator. Furthermore, Plaintiff and Mr. Thompson engaged in different conduct that resulted in different outcomes rendering them **not** similarly situated.

In the Fifth Circuit, "to establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances." *Okoye v. University of Texas Houston Health*, 245 F.3d 507, 514 (5th Cir. 2001); *see Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 602 (5th Cir. 2015) (stating that the court must "compare the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff."). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation

histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). However, when the differences in conduct **accounts for** the differences in outcome, the employees are not similarly situated. As the Fifth Circuit has explained,

> the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions, because [i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated **accounts for the difference** in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (quoting *Lee*, 574 F.3d at 260), *as revised* (June 22, 2012) (emphasis added); *see Glaskox v. Harris Cty., Tex.*, 537 F. App'x 525, 529 (5th Cir. 2013) ("[A] plaintiff 'must show that ... employees [who were not members of the plaintiff's protected class] were treated differently under circumstances nearly identical to his.'" (quoting *Turner*, 675 F.3d at 893)); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 638 (5th Cir. 2011) (opining that a valid comparator could not be established through an employee that had never committed the same violation that prompted the plaintiff's adverse employment action); *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004) (emphasizing that assessment of similarity of employees must be viewed from employer's perspective).

Here, Plaintiff and Mr. Thompson are not similarly situated. First, the record demonstrates that Plaintiff was Mr. Thompson's supervisor. Ex. 1, Plaintiff's Depo. 22:21-23 (Q. Did anyone else report to you? A. The -- yes.  Randy Thompson.). "A supervisor and his subordinates are not similarly situated." *Wilson v. L&B Realty Advisors, LLP*, 3:20-CV-2059-G, 2022 WL 102564, at *22 (N.D. Tex. Jan. 11, 2022) (citing *Amezquita v. Beneficial Texas, Inc.*, 264 F. Appx. 379, 386 (5th Cir. 2008); *see also Grimes v. Wal–Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 379 (5th Cir. 2013) (plaintiff's subordinate who was also a manager not a valid comparator); *Crosby v.*

*Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (plaintiff's supervisor not a valid comparator); *Greer v. Armstrong World Industries, Inc.*, 5:09-CV-20 (DCB), 2010 WL 2926043, at *6 (S.D. Miss. July 21, 2010) ("In fact, Robertson was one of the plaintiff's subordinates, which negates any suggestion that she and the plaintiff were proper comparators."). Therefore, Mr. Thompson is not a valid comparator for purposes of the similarly situated analysis.

Moreover, even if Mr. Thompson is a potentially valid comparator (which he is not), Mr. Thompson and Plaintiff did not engage in "nearly identical" conduct. Plaintiff concedes that the statement at issue in the *Mothballing* article was taken word for word from another source without citation. Ex. 1, Plaintiff's Depo. at 82:3-8 (Q. Now, that's the same sentence.  That's the identical sentence to the one you just read.  Would you agree? A. Seems like it. Q. Right.  And you didn't write this Lorman article? A. No.). The record evidence demonstrates this plagiarism was the actual reason for Plaintiff's termination. Ex. 7, email between Berger and Waters; Ex. 8, Johnson Aff. at ¶¶ 4-10; Ex. 14, Johnson Depo. at 110:1-14. By contrast, Mr. Thompson, albeit improperly, attempted to cite his sources. *See* Ex. 15, *Energy Sector Equipment Fire Protection Article.*

Internet article about "A Review of Failures, Causes & Consequences in the Bulk Storage Industry":
"The United States Environmental Protection Agency (USEPA) commissioned a study to investigate the common sources of failure and stated that a significant factor in tank farm accidents is human error. These bulk storage tank failures can be attributed to a number of causes including human error, poor

The evidence is clear, Mr. Thompson's good faith attempt to cite his sources was the actual reason he was not terminated. Ex. 3, Groenheide Aff. at ¶ 13-14. Thus, the **difference in conduct** resulted in a **difference in outcome.** Therefore, Mr. Thompson and Plaintiff are not similarly situated as a matter of law. *Turner*, 675 F.3d at 893. Finally, when confronted with the allegation of plagiarism, Plaintiff blamed "legal" while Mr. Thompson denied the allegation outright and was able to demonstrate that he made a good faith effort to cite his sources, which further supports the conclusion the two are not similarly situated.

16

At bottom, Plaintiff and Mr. Thompson are not similarly situated and there is no other record evidence that arguably supports a finding of pretext. Moreover, even if the similarly situated analysis is a close call (which it is not), it is insufficient to create a genuine issue of material fact in light of the same actor inference. Therefore, GuideOne is entitled to judgment as a matter of law as to all of Plaintiff's claims.

**F.     In the alternative, GuideOne is entitled to partial summary judgment on its after-acquired evidence defense.**

"When there is after-acquired evidence that would justify a plaintiff's termination, front pay and reinstatement are not appropriate remedies, although back pay may be awarded from the date of the unlawful discharge to the date the new information was discovered." *Weeks v. Coury*, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996) (citing *McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352 (1995)) "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 363.

On November 24, 2020, Mr. Thompson discovered several forms Plaintiff had uploaded to GuideOne's system. Mr. Thompson recognized these forms as proprietary documents belonging to their previous employer. Ex. 4, Thompson Aff. at ¶ 12 and Exhibit. Had Plaintiff not been terminated on November 4, 2020, he would have been terminated on November 24, 2020 when GuideOne discovered he had saved proprietary content from a previous employer on GuideOne's system and potentially exposed GuideOne to liability. Therefore, GuideOne is entitled to partial summary that Plaintiff is not entitled to back pay after November 24, 2020.

**G.**     **In the alternative, GuideOne is entitled to partial summary judgment on its failure to mitigate defense.**

Plaintiff is required to mitigate his damages by using reasonable efforts to obtain and maintain comparable employment following his termination. *West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 393 (5th Cir. 2003). The *West* court held that once an employer proves the employee failed to make reasonable efforts to obtain work, the employer does not also have to prove the availability of substantially equivalent employment. *Id*. Nevertheless, some courts have suggested that an employer always bears the burden to prove both elements and cite to *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). This court should apply the rule set forth by the court in *West*. However, the Court need not determine which rule is controlling because the undisputed evidence establishes that Plaintiff failed to make reasonable efforts and that substantially equivalent employment was available.

After Plaintiff's separation from GuideOne, he was unemployed for approximately nine months. He accepted full time employment with Zurich Insurance Group in July 2021. Ex. 1, Plaintiff's Depo. at 14:14-21. After accepting employment with Zurich, at a rate of pay allegedly lower than his pay at GuideOne, Plaintiff abandoned his search for comparable employment. *Id.* at 14:22-15:1. Nevertheless, Plaintiff seeks to recover the difference between the income he would have earned at GuideOne and the income he actually earned at Zurich. However, Plaintiff admits that he has failed to make reasonable efforts to obtain work at a comparable level of compensation after July 2021. *Id.* at 14:18-15:1. ("Q: Have you looked for any other work while you've been employed with Zurich? A. I have not actively, no. I mean -- Is that a "no"? A: Yes, that's a "no," yes.) It is plainly inequitable for Plaintiff to voluntarily accept and remain at a job with a lower rate of pay, while at the same time seeking recovery of the difference in income from GuideOne.

Moreover, the record evidence demonstrates that substantially equivalent employment was and has been available since Plaintiff's termination. Ex. 8, Johnson Aff. at ¶ 13.

GuideOne has established that Plaintiff failed to use reasonable efforts to obtain and maintain comparable employment and that substantially equivalent employment was available. Plaintiff will not be able to establish a genuine dispute as to a material fact as to either element. Accordingly, GuideOne is entitled to partial summary judgment precluding Plaintiff from recovering any back pay or front pay after he accepted employment with Zurich. *See Branch v. City of Brookshire*, No. CV H-16-1888, 2018 WL 3439636, at *4 (S.D. Tex. July 16, 2018) (granting partial summary judgment based on the failure to mitigate defense); *Fontenot v. Hughes MRO, Ltd*., No. CIV.A. H-06-1245, 2007 WL 2670099, at *7 (S.D. Tex. Sept. 7, 2007).

## <u>CONCLUSION</u>

Plaintiff maintains that GuideOne made the wrong decision when it terminated him for plagiarism that exposed it to reputational and legal risk. However, GuideOne does not have to make "correct" decisions, only non-discriminatory and non-retaliatory ones. The record evidence demonstrates that GuideOne investigated articles written by two employees for potential plagiarism. The investigation determined that Plaintiff copied a sentence from a copyrighted article without citation. This was the actual reason Plaintiff was terminated. There is no evidence that suggests otherwise. Therefore, summary judgment in favor of GuideOne is appropriate at to all of Plaintiff's claims.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

_/s/ Carolyn Russell_
Carolyn Russell
Texas State Bar No. 24003913
USDC SD/TX: 25141
carolyn.russell@ogletree.com
One Allen Center
500 Dallas, Suite 3000
Houston TX  77002
(713) 655-0855 – Phone
(713) 655-0020 – Fax

**ATTORNEY-IN-CHARGE FOR**
**DEFENDANT**

**OF COUNSEL:**

Ryan J. Swink
Texas State Bar No.24107940
USDC SD/TX:3631019
Ryan.swink@ogletree.com
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
One Allen Center
500 Dallas, Suite 3000
Houston TX  77002
(713) 655-0855 – Phone
(713) 655-0020 – Fax

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to counsel of record:

> Peter Costea
> Law Office of Peter Costea
> 4544 Post Oak Place, Suite 350
> Houston, Texas 77027
> peter@costealaw.com

**ATTORNEY FOR PLAINTIFF**

_/s/ Carolyn Russell_
Carolyn Russell